**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SCHULTZ BROS. CO., an Illinois Corporation, ) ) ) | |
| Plaintiff, ) ) | Case No. 10 C 2995 |
| v. ) ) | |
| OSRAM SYLVANIA PRODUCTS, INC., ) a Delaware Corporation, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On May 14, 2010, Defendant Osram Sylvania Products, Inc. ("Osram") removed this action from the Circuit Court for the 19th Judicial Circuit in Lake County, Illinois pursuant to the Court's diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441. In its Complaint, Plaintiff Schultz Bros. Co. ("SBC") alleges that Osram breached a lease pertaining to real property at 800 North Church Street, Lake Zurich, Illinois. Before the Court are Osram's and SBC's cross-motions for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants SBC's motion and denies Osram's motion.

**BACKGROUND**

SBC is an Illinois corporation and is the owner and landlord of certain improved real property containing approximately 116,925 square feet of space located at 800 North Church Street in Lake Zurich, Illinois ("Warehouse"). (R. 47, Def.'s Rule 56.1 Stmt. Facts ¶ 1; R. 54, Pl.'s Rule 56.1 Stmt Facts ¶ 1.) Osram is a Delaware corporation with its headquarters in Massachusetts. (Def.'s Stmt. Facts ¶ 2; Pl.'s Stmt. Facts ¶ 2.) Osram is a former tenant of the

Warehouse pursuant to a lease that expired on October 31, 2009. (Def.'s Stmt. Facts ¶¶ 5, 11; Pl.'s Stmt. Facts ¶¶ 5, 12.)

On October 4, 1995, SBC and Motorola, Inc. ("Motorola") entered into a lease for the Warehouse ("Original Lease"). (Def.'s Stmt. Facts ¶ 7; Pl.'s Stmt. Facts ¶ 8.) On November 19, 1998, SBC and Motorola executed an amendment to the Original Lease ("Amendment"). (Def.'s Stmt Facts ¶ 8; Pl.'s Stmt. Facts ¶ 9.) Motorola assigned the lease to Osram on February 29, 2000 pursuant to an Assignment and Assumption Agreement ("Assignment"). (Def.'s Stmt. Facts ¶ 10; Pl.'s Stmt. Facts ¶ 10.) The Original Lease, the Amendment, and the Assignment comprise all of the terms of SBC's and Motorola's/Osram's contract for the lease of the Warehouse ("Lease"). (Pl.'s Stmt. Facts ¶ 11.)

Prior to the end of Osram's tenancy at the Warehouse, SBC determined that the roof, the parking lot, and eight heating units were no longer reparable and needed to be replaced. (*Id*. ¶¶ 24, 33, 38, 39.) Thereafter, SBC requested that Osram replace the roof in 2006, the parking lot in 2007, 2008, and 2009, and the heating units in 2009 pursuant to the Lease. (*Id*. ¶¶ 25, 33, 40.) Despite SBC's requests, Osram did not replace the roof, parking lot, and heating units because Osram contends that the terms of the Lease do not require it to replace major components of the Warehouse. In the meantime, SBC replaced the roof in 2006 and replaced the heating units in 2009. (*Id*. ¶¶ 27, 42.) To date, Osram has not paid or reimbursed SBC for the roof or the heating units nor has Osram replaced the parking lot. (*Id*. ¶¶ 29, 36, 43.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

At issue in the parties' cross-motions for partial summary judgment is whether the maintenance, repair, and replacement provision in the Lease requires SBC, as the landlord, or Osram, as the tenant, to bear the cost of the new roof, parking lot, and heating units for the Warehouse.[1] The parties agree that Illinois law governs the present dispute. Under Illinois law, courts "construe contracts by giving their unambiguous terms clear and ordinary meaning, in an effort to determine the parties' intent." *Reger Dev., LLC v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (internal citation omitted); *see also Kim v. Carter's Inc.,* 598 F.3d 362, 364 (7th Cir. 2010). In construing contracts under Illinois law, courts look to the contract as a whole. *See Reger,* 592 F.3d at 764; *Curia v. Nelson,* 587 F.3d 824, 829 (7th Cir. 2009). As the Seventh

---

[1] On April 5, 2011, the Court granted Osram's motion to defer ruling on portions of SBC's motion for partial summary judgment regarding liability in relation to interior improvements and additional repairs.

Circuit teaches, if the lease's "language is unambiguous, that is, not susceptible to more than one meaning, we confine our analysis to the language of the lease, and we read that language according to its ordinary meaning." *Rexam Beverage Can Co. v. Bolger* 620 F.3d 718, 724 (7th Cir. 2010) (applying Illinois law) (internal citation omitted).

The relevant maintenance provision is found in Article XII of the Lease, and is entitled Maintenance, Repairs, and/or Replacements:

> The Lessee shall at all times, at its own cost and expense, keep the interior and/or exterior, *structural and/or nonstructural of the Leased Premises, including but not limited to all, whether ordinary or extraordinary*, plumbing, electrical, building fixtures, walls, ceilings, floors, lighting, *roof*, doors, windows, foundations, downspouts, gutters, *heating*, air conditioning and any and *all other building systems*, in good order, condition and repair.
>
> At all times all such maintenance, *repairs and/or replacements* shall be performed in a good and workmanlike manner employing new materials of high quality.
>
> If Lessee fails to maintain and *repair or replace* portions of the Leased Premises requiring same promptly and properly, and if such failure is not cured within thirty (30) days after receipt by Lessee of written notice thereof from Lessor, Lessor may at its option perform such maintenance, *repairs and/or replacements* on behalf of Lessee, and Lessee, will, within thirty (30) days of receipt by Lessee of written evidence of the cost and payment thereof by Lessor, pay to Lessor the cost thereof plus ten percent (10%) of same, as "additional rental" due hereunder.
>
> Lessor's liability with respect to any defects, repairs or maintenance for which Lessor is responsible under any of the provisions of this Lease shall be limited to the cost of such repairs or maintenance or the curing of such defect.

(Pl.'s Rule 56.1 Ex. A, Original Lease at 11.) (emphasis added). Paragraph 9 of the Amendment further provides: "Article III of the lease is modified in that lessee shall at its sole cost and expense maintain, repair and *replace* the landscaping, *parking lots* (including without limitation snow removal), drives and the like, to the Lessor's reasonable specifications and/or approval." (*Id.*, Ex. B, Amendment at 2.) (emphasis added).

4

Here, Osram argues that the language in the Lease and Amendment constitutes a "general repair clause" and that Illinois law mandates that a landlord is responsible for capital replacements unless the maintenance provision in a lease makes it "plainly discoverable" that it is the tenant's responsibility. More specifically, "[a] general covenant of the tenant to repair, or to keep the premises in repair, merely binds him to make the ordinary repairs reasonably required to keep the premises in proper condition; it does not require him to make repairs involving structural changes, or to make renewals and replacements which would last a lifetime." *Sandelman v. Buckeye Realty, Inc.,* 216 Ill.App.3d 226, 230, 160 Ill.Dec. 84, 576 N.E.2d 1038 (1st Dist. 1991); *see also Kallman v. Radioshack Corp.,* 315 F.3d 731, 738 (7th Cir. 2002) ("Under Illinois law, a general covenant to repair does not require a lessee to make repairs involving structural changes."). Thus, "[i]n order to shift to the tenant a burden which would naturally fall on the landlord, the warrant for the change should be plainly discoverable in the lease." *Sandelman,* 216 Ill.App.3d at 230; *see also Quincy Mall, Inc. v. Kerasotes Showplace Theatres, LLC,* 388 Ill.App.3d 820, 824, 328 Ill.Dec. 227, 903 N.E.2d 887 (4th Dist. 2009).

SBC argues that the Lease contains "plainly discoverable" language that it is Osram's duty, as the tenant, not only to repair structural and non-structural elements, but also to replace structural and non-structural elements of the Warehouse, including the roof, heating, and parking lot, whether the work is ordinary or extraordinary. The Court agrees. First, the relevant clause's title includes not only maintenance and repairs, but also replacements. Second, the Lease and Amendment specifically identify the roof, parking lot, and heating units as part of the structural and non-structural elements that Osram must repair or replace. As the Seventh Circuit reasoned in *Rexam*, unambiguous language such as "structural and extraordinary changes" is plainly

5

discoverable language shifting the burden to the tenant. *See id*. 726-27. Specifically, in *Rexam* the court concluded that the following lease provision unambiguously required the commercial tenant to replace the roof of the leased property:

> Maintenance and Alteration. Lessor shall have no obligation with respect to the maintenance and repair of the Premises or any buildings or improvements which may be erected or made thereon. Lessee shall be solely responsible for the maintenance of such buildings and Premises and for keeping all of the same in good condition, order and repair, *including all structural and extraordinary changes that may be required,* reasonable use and ordinary wear and tear excepted, and Lessee will repair, during the term, all injury or damage done by the installation or removal of equipment or property. Lessee may make structural and other alterations or additions to the Premises and to any buildings or improvements which may be erected or made thereon, provided the general character thereof is not materially changed and the value of the Premises as a whole is not reduced thereby.

*Id.* at 725 (emphasis added).

Similarly, in *Kallman*, the Seventh Circuit, applying Illinois law, concluded that the following lease provision required the tenant to replace the roof, re-pave the parking lot, and replace two HVAC units:

> Lessee shall, at its own expense, keep all buildings or improvements now or hereafter placed on the demised premises during the lease term in good order and repair; *Lessee shall be liable for repair to the roof and for any structural failure of the building*.... Lessee shall pay all costs of any alterations and additions....

*Kallman,* 315 F.3d at 738 (emphasis in original).

Meanwhile, the Illinois Appellate Court's decision in *Sandelman* explains that a general repair clause binds a tenant to make ordinary repairs, yet in the present Lease, Osram is unequivocally responsible for extraordinary repairs and replacement. *See Sandelman,* 216 Ill.App.3d at 230. Further, the *Sandelman* decision describes a general repair clause as one that does not require repairs involving structural changes, *see id.*, but the parties' Lease clearly states

6

that structural repairs and replacement are Osram's responsibility. Also, the lease provisions in *Sandelman* and *Quincy Mall* are easily distinguishable because they did not contain references to "structural" or "extraordinary" repairs, nor did these lease provisions explicitly state that the commercial tenant was required to replace any structural elements like the Lease at issue in this lawsuit. *See Sandelman*, 216 Ill.App.3d at 229; *Quincy Mall,* 388 Ill.App.3d at 822; *see also Rexam,* 620 F.3d at 726-26; *Kallman*, 315 F.3d at 738. Therefore, the Lease does not contain a general repair clause as Osram argues, but instead clearly and unambiguously shifts the burden to Osram for the repair and replacement of all ordinary and extraordinary structural and non-structural elements. *See Rexam,* 620 F.3d at 725-26; *Kallman,* 315 F.3d at 738-39.

Nevertheless, Osram asserts that the Lease's Maintenance, Repairs, and/or Replacements Clause must be read in the context of the Surrender Clause, which states in pertinent part: "Upon termination of this Lease...Lessee will at once surrender and deliver up the Leased Premises, together *with all improvements* thereon, to Lessor in a fully operational, clean, safe, good condition, reasonable wear and tear...excepted." (Ex. A, Original Lease at 21.) (emphasis added). Osram specifically argues that because reasonable wear and tear is excepted in the Surrender Clause, Osram has no duty to repair or replace structural and non-structural elements under the Lease's Maintenance, Repairs, and/or Replacements Clause in the first instance.

Osram's interpretation would render much of the Maintenance, Repairs, and/or Replacements Clause meaningless. As the Supreme Court of Illinois recently reiterated, a "court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson v. Gordon,* 241 Ill.2d 428, 442, 349 Ill.Dec. 936, 948 N.E.2d 39 (Ill. 2011). Here, the Court is

7

unwilling to ignore the Lessee's repair and replacement obligations set forth in the Lease's maintenance provision in order to accept Osram's strained interpretation, especially because the Surrender Clause is consistent with the replacement obligations. Specifically, the Surrender Clause requires Osram to return the leased premises in good condition, including any improvements or changes that have been made.

## CONCLUSION

For the these reasons, the Court grants Plaintiff's motion for partial summary judgment and denies Defendant's motion for partial summary judgment brought pursuant to Federal Rule of Civil Procedure 56.

**Date:** September 30, 2011

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**